# 2000 DTA 168

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL I DE SAN JUAN
PANEL III**

PARTIDO LABORAL DE UNIDAD SOCIAL
Demandante-Recurrente

v.

COMISION ESTATAL DE ELECCIONES, LIC. JOSE R. MELECIO, *ET ALS*
Demandados-Recurridos

Núm. KLAN-2000-00507

San Juan, Puerto Rico, a 23 de junio de 2000

Panel integrado por su Presidente, Juez Arbona Lago
y los Jueces Urgell Cuebas y Cordero

Arbona Lago, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La agrupación denominada Partido Laboral de Unidad Social (P.L.U.S.) inició un procedimiento de inscripción como partido político por petición ante la Comisión Estatal de elecciones en el 1998. El 5 de agosto de 1999, el P.L.U.S. instó ante el Tribunal de Primera instancia, Sala Superior de San Juan, un recurso de *"Injunction"*, en el que impugnó la constitucionalidad de la Ley Electoral de Puerto Rico, Ley Núm. 4 de 20 de diciembre de 1977, según enmendada, 16 L.P.R.A. 3001 *et seq.*, aduciendo que ésta se aprobó únicamente con el consenso de los tres partidos políticos al presente inscritos, sin tomar en consideración el interés de los electores no afiliados. Impugnó, además, la constitucionalidad del artículo 3.001 de la Ley Electoral, *supra*, 16 L.P.R.A. §3101, señalando que infringe la cláusula de igual protección de la ley cuando requiere que para lograr la inscripción de un *"partido por petición"* sus patrocinadores habrán de obtener un número de peticiones de endosos equivalentes al cinco porciento (5%) de los votos obtenidos para el cargo de Gobernador en las elecciones inmediatamente anteriores, mientras que a un partido político ya inscrito sólo se le requiere obtener un tres por ciento (3%) de los referidos votos para mantener su franquicia electoral, luego de elecciones generales. También reclamó que es inconstitucional exigirle al P.L.U.S. que las peticiones de inscripción sean juradas ante un notario público, mientras que a los candidatos independientes y a los participantes en las primarias internas de los partidos políticos no se les requiere presentar endosos suscritos ante notario.

El asunto fue atendido en los méritos en el hermano foro de Primera Instancia, donde se desestimó la petición de *"Injunction"* al amparo de la Regla 10.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 10.2. Sostuvo Instancia que el P.L.U.S. carecía de legitimación activa para impugnar la Ley Electoral por falta de consenso y que el mecanismo de consenso planteaba una cuestión política no justiciable. Resolvió, además, que ante la ley, los partidos en proceso de inscripción no están situados a la par con los partidos políticos ya registrados que concurren al evento electoral o con los candidatos independientes. Señaló, también, que las diferencias entre estos grupos y entidades en el plano político validaban los requisitos de la Ley Electoral, en cada una de tales situaciones.

El 1ro. de mayo de 2000, el P.L.U.S. radicó la apelación del epígrafe y el 23 de mayo de 2000 presentó Moción Urgente Solicitando Orden Interlocutoria para que extendiésemos por un período de tiempo razonable el término que la ley le otorga para terminar de radicar sus peticiones de inscripción, que ha de vencer el

primero de junio de 2000.

El 23 de mayo de 2000, compareció la Comisión Estatal de Elecciones mediante *"Moción en Solicitud de Desestimación"* y adujo que la parte apelante incumplió con el término de cumplimiento estricto de la Regla 13 del Reglamento del T.C.A., 4 L.P.R.A. Ap. XXII-A, en tanto y en cuanto notificó a la Comisión el escrito de apelación el 5 de mayo de 2000, cuando lo había radicado el 1 de mayo de 2000.

Mediante resolución de 26 de mayo de 2000, denegamos la moción de desestimación, ya que el recurso, si bien no había sido notificado a la Comisión el día de su presentación ante el Tribunal, le había sido notificado dentro del término jurisdiccional que venció el 1ro. de mayo de 2000. Mediante la referida resolución, también denegamos la moción en auxilio, presentada el 23 de mayo de 2000 por P.L.U.S., por entender que no se cumplían los requisitos necesarios para la expedición del mismo. Por otro lado, concedimos término a las partes para acreditar respecto a si los codemandados *"Comisionados Electorales"* habían sido emplazados o se habían sometido a la jurisdicción del Tribunal de Instancia, ya que no constaba de autos que el recurso de apelación les hubiese sido notificado.

El P.L.U.S. compareció en cumplimiento de orden certificando haber emplazado a los tres Comisionados Electores, lo que la C.E.E. corroboró y señaló que los tres comisionados comparecían en el presente caso a través de la C.E.E.

Constatado que todas las partes fueron debidamente notificadas y con los respectivos alegatos de las partes apeladas, queda sometida la causa ante nos y procedemos a resolver. ■

**Exposición y Análisis**

Los primeros tres señalamientos de error van dirigidos a impugnar la constitucionalidad del artículo 3.001 de la Ley Electoral, *supra*, cuando requiere que para lograr la inscripción de *"partido por petición"* se obtenga un número de peticiones de endosos equivalentes al cinco porciento (5%) de los votos obtenidos para el cargo de Gobernador en las elecciones inmediatamente anteriores, mientras que a un partido político, ya inscrito, sólo se le requiere obtener un tres por ciento (3%) de los referidos votos para mantener su franquicia electoral, luego de unas elecciones generales. Sostiene el apelante que la utilización de porcentajes distintos infringe la cláusula de la igual protección de la ley. Señala, además, que dicho requisito es oneroso, opresivo y discriminatorio.

**I**

El derecho a formar agrupaciones para propósitos políticos a través de una papeleta electoral, ciertamente es un derecho fundamental, pero no es absoluto. *Partido Acción Civil v. E.L.A.,* **2000 J.T.S. 33**, a la pág. 680; *Sánchez, Colón v. E.L.A.,* **93 J.T.S. 138**, a la pág. 11206, opinión de Conformidad del Juez Presidente señor Andréu García.

El artículo VI, sección 4 de la Constitución del Estado Libre Asociado de Puerto Rico, establece que *"[s]e dispondrá por ley todo lo concerniente al proceso electoral y de la inscripción de electores, así como lo relativo a los partidos políticos y candidaturas".* Por lo tanto, se delegó en la Legislatura todo lo concerniente al proceso electoral, inclusive los partidos políticos y candidaturas. Esta facultad es amplia y abarcadora y tiene el efecto de restringir e imponer cargas sobre el derecho a participar en el proceso electoral. *Partido Acción Civil v. E.L.A., supra,* a la pág. 681; *Ramírez de Ferrer v. Mari Brás,* **97 J.T.S. 134,** a las págs. 209 -210, Opinión de Conformidad; *P.R.P. v. E.L.A.,* 115 D.P.R. 631, 636-637 (1984).

Ahora bien, dicha facultad no es absoluta. *Partido Acción Civil v. E.L.A., supra; Ramírez de Ferrer v. Mari Brás, supra; P.R.P. v. E.L.A., supra.* Precisamente, el artículo II, sección 7 de nuestra Constitución, que conocemos como la cláusula de la igual protección de las leyes, lo que prohíbe es el trato desigual injustificado. *Partido Acción Civil v. E.L.A., supra,* a la pág. 683; *Asoc. Academias y Col. Cristianos v. E.L.A.,* **94 J.T.S. 16,** a

la pág. 11520; *Berberena v. Echegoyen*, 128 D.P.R. 864, 878 (1991). La cláusula de igual protección garantiza que, tomando en consideración el propósito y alcance de la ley, individuos que se encuentren en situaciones similares sean tratados de modo similar por parte del Estado. Pero esta garantía constitucional no prohíbe que la Asamblea Legislativa establezca clasificaciones, ni requiere un trato igual para todas las personas. *Partido Acción Civil v. E.L.A., supra*; *Soto v. Adm. Inst. Juveniles*, 99 **J.T.S. 109**, a la pág. 1264; *Pérez, Román v. Proc. Esp. Rel. de Fam.*, 99 **J.T.S. 70**, a la pág. 962.

Al examinar una disposición de ley a la luz de la cláusula de la igual protección de las leyes, el tribunal debe examinar: 1) si las personas excluidas de la clasificación, están igualmente situadas que aquellas que fueron incluidas, o viceversa; 2) cuál es el propósito del estatuto que se impugna; y 3) si la clasificación establecida por la Asamblea Legislativa, al incluir a unas personas y excluir a otras, es razonable, en virtud del objetivo que se persigue; de ser ello afirmativo, no se viola la garantía constitucional de igual protección de las leyes. *Partido Acción Civil v. E.L.A., supra*.

En primer lugar, los partidos políticos inscritos y las agrupaciones políticas en vías de inscripción no están igualmente situados. Es doctrina reiterada que una agrupación política no se convierte en acreedora de un trato igual a los partidos tradicionales, hasta tanto satisface todos los requisitos exigidos por las leyes electorales para su inscripción. *Partido Acción Civil v. E.L.A., supra*, a la pág. 684.

Los partidos políticos deben cumplir con rigurosas normas electorales y operan bajo un esquema diseñado para que el Estado pueda supervisar y fiscalizar sus actividades políticas, administrativas y financieras. Además participan del Fondo Electoral que es de carácter permanente y garantiza a todos los partidos políticos principales y por petición una partida de $300,000.00 anuales en años no eleccionarios, y de $600,000.00 en años eleccionarios (Art. 3.023 de la Ley Electoral, *supra*, 16 L.P.R.A. §3116); tienen derecho a un Comisionado Electoral y a tener representantes a tiempo completo en las Juntas de Inscripción Permanente, todo ello a cargo del erario público. *Partido Acción Civil v. E.L.A., supra*, a la pág. 685.

En segundo lugar, la legislación pone de manifiesto que el Estado tiene un interés fundamental en que las agrupaciones políticas, que interesan inscribirse como partidos, demuestren que cuentan con suficiente base electoral, ya que una vez reconocidas como *"partidos por petición"*, tienen derecho a presentar candidatos a puestos electivos en los comicios generales y a una participación anual sustancial del Fondo Electoral. *Partido Acción Civil v. E.L.A., supra*, a la pág. 687.

En tercer lugar, el establecimiento de unos requisitos más rigurosos que los requisitos establecidos para los partidos inscritos para las peticiones de inscripción de las agrupaciones políticas que aspiran a convertirse en *"partidos por petición"*, persigue salvaguardar el importante interés público de proteger la integridad del proceso electoral y garantizar la base electoral para evitar las candidaturas frívolas y fraudulentas. *Partido Acción Civil v. E.L.A., supra*, a la pág. 684.

Ante las circunstancias expuestas, la utilización de porcentajes distintos para inscripción de un partido por petición *versus* el mantenimiento de la franquicia electoral de un partido ya inscrito y que concurrió al último evento electoral general, no infringe la cláusula de la igual protección de las leyes.

## II

Examinemos si la disposición impugnada resulta tan onerosa que impide el acceso de la parte apelante a la papeleta electoral, y afecta el derecho de la parte apelante a ser candidato a un puesto público.

El derecho a comparecer como asociación en la papeleta electoral, así como el ser candidato a un cargo electivo, no son derechos fundamentales. *Partido Acción Civil v. E.L.A., supra*, a la pág. 687; *Berberena v. Echegoyen, supra*, a la pág. 880. Como antes señalado, la Asamblea Legislativa tiene la facultad de reglamentar los requisitos necesarios para tener acceso a la papeleta electoral, aunque dicha reglamentación no puede

restringir de modo innecesario o discriminatorio las oportunidades de un candidato o de una agrupación política a tener acceso al electorado, ni puede excluir del proceso electoral a ciertos tipos de candidatos o partidos. *Id.*

Cuando se impugna la constitucionalidad de una ley al amparo de la doctrina de acceso a la papeleta, no se impone automáticamente a los tribunales el deber de aplicar un escrutinio estricto. En primer lugar, corresponde al Tribunal determinar si la restricción es severa, irrazonable o discriminatoria, y examinar la naturaleza y magnitud del daño alegado y la dimensión del perjuicio ocasionado. Si se determina que la restricción es severa, irrazonable o discriminatoria, se sujeta la reglamentación al escrutinio estricto. Es severa aquella restricción que tiene el efecto de hacer imposible que todo nuevo candidato o asociación política pueda tener acceso a la papeleta electoral. En tal caso, es menester dilucidar si un candidato que ejerce una diligencia razonable puede satisfacer los requisitos impuestos por el Estado. *Partido Acción Civil v. E.L.A., supra*, a la pág. 687; *Sánchez, Colón v. E.L.A., supra*.

En tanto y en cuanto la restricción impuesta por el estatuto es razonable y no discriminatoria, se aplica el estándar de balance de intereses. En este proceso se evalúan los intereses gubernamentales que justifican la imposición de la restricciones impugnadas y se sopesan frente a la naturaleza y magnitud de los daños alegados por los demandantes respecto a sus derechos al voto y a la libre asociación. Luego se procede a determinar si los intereses gubernamentales aducidos por el Estado para adoptar la reglamentación pertinente son legítimos, y si la importancia de esos intereses justifica la imposición de la reglamentación impugnada. Dentro de este análisis, un interés importante del Estado sería suficiente para sostener la validez constitucional de la reglamentación. *Partido Acción Civil v. E.L.A., supra*, a la pág. 68 7; *Sánchez, Colón v. E.L.A., supra*.

El P.L.U.S. alega que la disposición impugnada es onerosa, opresiva y discriminatoria y que le imposibilita obtener los endosos necesarios para su inscripción.

En primer lugar, la disposición impugnada no resulta discriminatoria. Aplica por igual a toda aquella agrupación política que aspire a concurrir en la papeleta electoral como *"partido por petición"*, independientemente de su ideología política o filosofía social. En segundo lugar, el requisito impuesto no es imposible de cumplir ni es irrazonable. Por el contrario y como antes dicho, responde al interés legítimo del Estado para exigir que las agrupaciones políticas que pretenden tener acceso a la papeleta electoral demuestren contar con el apoyo del electorado, por lo cual se justifica la imposición de la disposición impugnada.

Por otro lado, al alcance del P.L.U.S., el ordenamiento electoral vigente también provee otras alternativas, además de partido por petición, para accesar a la papeleta electoral: la candidatura independiente y el voto directo. Art. 4.027 de la Ley Electoral, *supra*, 16 L.P.R.A. 3177, y Art. 5.11 de la Ley Electoral, *supra*, 16 L.P.R.A. 3211.

En conclusión, la disposición impugnada no constituye una barrera infranqueable a la papeleta electoral. No es discriminatoria ni tan severa como para imposibilitar que una agrupación política logre acceso a la papeleta electoral.

Además, constituye un ejercicio razonable de la discreción de la Asamblea Legislativa para promover intereses legítimos mediante el establecimiento de requisitos razonables dirigidos a garantizar un proceso electoral justo y libre de fraude. *Partido Acción Civil v. E.L.A., supra*, a la pág. 692.

## III

Por último, señala la parte apelante que erró el Tribunal de Primera Instancia al determinar que el P.L.U.S. no tiene *"standing"* para impugnar el consenso como mecanismo de legislación electoral, debido a que el P.L.U.S. no particularizó cómo el consenso electoral le afectó y tampoco alegó encontrarse entre los electores no afiliados.

Para impugnar la constitucionalidad de una ley, no basta con una mera alegación a los efectos de que la ley es inconstitucional. *Hernández Torres v. Hernández Colón*, 131 D.P.R. 593, 602 (1992). Se requiere que el reclamante posea legitimación activa o *"standing"*. Esta doctrina responde a un sano criterio de autolimitación y prudencia judicial que emana del principio de justiciabilidad, el cual establece las condiciones mínimas para el ejercicio del poder judicial dentro de nuestro esquema constitucional. *Hernández Torres v. Hernández Colón, supra*, a la pág. 599; *Colegio de Opticos v. Vani Visual*, 124 D.P.R. 559, 563 (1989); *E.L.A. v. Aguayo*, 80 D.P.R. 552, 597 (1958).

Una parte demandante posee legitimación activa cuando cumple los siguientes requisitos: (1) ha sufrido un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe un nexo causal entre la acción que se ejercita y el daño alegado; y (4) la causa de acción surge al amparo de la Constitución o de alguna ley. *García v. J.C.A.*, **97 J.T.S. 25**, a la pág. 662; *Asoc. Maestros de P.R. v. Srio. Educación*, **94 J.T.S. 145**, a la pág. 446; *Hernández Torres v. Hernández Colón, supra*.

Las organizaciones o asociaciones pueden demandar a nombre propio o a nombre de sus miembros o integrantes. *P.P.D. v. Rosselló González*, **95 J.T.S. 165**, a la pág. 437; *Asociación de Maestros v. José Arsenio Torres, supra*, a la pág. 446; *Colegio de Opticos v. Vani Visual, supra*, a la pág. 566. En el primer caso, cuando la asociación demanda a nombre propio, ha de cumplir con los cuatro elementos requeridos a cualquier demandante para instar una acción judicial. En el segundo caso, cuando la asociación demanda a nombre de sus miembros, se les ha reconocido legitimación activa para demandar, siempre que puedan demostrar que: (1) los miembros de la organización tendrían legitimación activa para demandar a nombre propio; (2) los intereses que se pretenden proteger están relacionados con los objetivos de la organización; y (3) la reclamación y el remedio solicitado no requieren la participación individual de los miembros en el pleito. *P.P.D. v. Rosselló Conzález, supra*; *Asociación de Maestros v. José Arsenio Torres, supra*; *Colegio de Opticos v. Vani Visual, supra*.

Los partidos políticos poseen legitimación activa para instar una acción judicial cuando pueden demostrar que sus intereses y derechos como entidad política han sido lesionados por una ley o actuación gubernamental. *P.P.D. v. Rosselló González, supra*, a las págs. 465-466, (Opinión de Conformidad Juez Asociado Señor Hernández Denton). Véase, además, *P.S.P v. C.E.E.*, 120 D.P.R. 580 (1988); *P.S.P v. Srio. de Hacienda*, 110 D.P.R. 313 (1980); *P.S.P. v. E.L.A.*, 107 D.P.R. 590 (1978).

En el presente caso, el P.L.U.S. no ha demostrado que ha sufrido un daño claro y palpable, ni tampoco que tal daño es real, inmediato, preciso y no uno de naturaleza abstracta e hipotética. Por el contrario, nos encontramos frente a unas alegaciones generalizadas sobre un daño que, a nuestro entender, es más abstracto o hipotético que real y preciso. En vista de que el P.L.U.S. también carece de legitimación activa para impugnar la constitucionalidad de la Ley Electoral, *supra*, estamos realmente ante una controversia no justiciable. No obstante lo expresado respecto a la falta de legitimación activa del P.L.U.S., es menester volver a destacar aquí lo antes señalado respecto a que la ley electoral impugnada no adolece de la inconstitucionalidad imputada.

### Dictamen

Por los fundamentos expuestos, se confirma la sentencia apelada.

Notifíquese por facsímil, teléfono y vía ordinaria de inmediato.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General